JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division

ROCHELLE L. RUSSELL (CA Bar No. 244992)
U.S. Department of Justice
Environmental Defense Section
301 Howard Street, Suite 1050
San Francisco, CA 94105
Tel: (415) 744-6566
Fax: (415) 744-6476

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| JOHN DONNELLY SWEENEY and POINT BUCKLER CLUB, LLC, | |
| Defendants. | |

The United States of America ("United States"), through its undersigned attorneys, by the authority of the Attorney General, and at the request of the United States Environmental Protection Agency ("EPA"), alleges as follows:

**NATURE OF THE ACTION**

1. This is a civil enforcement action commenced under sections 309(b) and (d) of the Clean Water Act ("CWA"), 33 U.S.C. § 1319(b) and (d), to obtain injunctive relief and civil

penalties against John Donnelly Sweeney and Point Buckler Club, LLC (jointly, "Defendants") for discharging pollutants, including dredged or fill material, into waters of the United States in Solano County, California, without authorization by the United States Department of the Army, in violation of CWA section 301(a), 33 U.S.C. § 1311(a).

2. The United States seeks: (a) injunctive relief prohibiting Defendants from further unauthorized discharges of pollutants; (b) injunctive relief compelling Defendants to restore and mitigate the impacts caused by the unauthorized discharges of pollutants alleged in this action; (c) civil penalties in favor of the United States and against Defendants; and (d) such other relief as the Court may deem appropriate.

3. Notice of the commencement of this action is being provided to the State of California pursuant to CWA section 309(b), 33 U.S.C. § 1319(b).

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to CWA section 309(b), 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1331, 1345, and 1355.

5. Venue is proper in the United States District Court for the Eastern District of California pursuant to CWA section 309(b), 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in and reside in this District, the waters of the United States into which pollutants were discharged are located in this District, and the events giving rise to these claims occurred in this District.

## THE PARTIES

6. Plaintiff is the United States of America, and authority to bring this action is vested in the United States Department of Justice pursuant to CWA section 506, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519.

7. Defendant John Donnelly Sweeney ("Sweeney") is an individual who resides in Suisun City, Solano County, California.

8. Defendant Point Buckler Club, LLC ("Point Buckler Club") is a corporation formed under the laws of California with a business address in Suisun City, Solano County, California.

9. Defendant Sweeney is a principal of and controls or substantially controls Defendant Point Buckler Club.

10. At all times relevant to the Complaint, Defendant Sweeney and/or Defendant Point Buckler Club owned and/or controlled the real property that is the subject of the Complaint and controlled, authorized, and/or conducted the activities relevant to the Complaint.

11. Although Sweeney and Point Buckler Club are the only named defendants at this time, the United States may seek to amend this Complaint to add additional defendants, including Jennifer Frost (also known as Jennifer Sweeney), as appropriate based on information obtained during discovery regarding such person's involvement with or responsibility for the CWA violations alleged in this Complaint.

## STATUTORY AND REGULATORY BACKGROUND

12. CWA section 101(a), 33 U.S.C. § 1251(a), provides that "[t]he objective of this chapter is to restore and maintain the chemical, physical, and biological integrity of the Nation's waters."

13. CWA section 301(a), 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" except, *inter alia*, as authorized by a permit issued pursuant to CWA section 404, 33 U.S.C. § 1344.

14. CWA section 502(5), 33 U.S.C. § 1362(5), defines "person" to include, *inter alia,* an "individual" and a "corporation."

15. CWA section 502(12), 33 U.S.C. § 1362(12), defines "discharge of a pollutant" as "any addition of any pollutant to navigable waters from any point source."

16. CWA section 502(6), 33 U.S.C. § 1362(6), defines "pollutant" to include, *inter alia*, dredged spoil, rock, sand, dirt, and biological materials.

17. CWA section 502(14), 33 U.S.C. § 1362(14), defines "point source" to include "any discernible, confined and discrete conveyance . . . from which pollutants are or may be discharged."

18. CWA section 502(7), 33 U.S.C. § 1362(7), defines "navigable waters" as "the waters of the United States, including the territorial seas."

19. Regulations codified at 33 C.F.R. § 328.3(a)[1] define "waters of the United States" to include, *inter alia*: (a) all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide ("traditional navigable waters"); and (b) wetlands adjacent to such traditional navigable waters.[2]

20. Regulations codified at 33 C.F.R. § 328.3(f) define "tidal waters" as "those waters that rise and fall in a predictable and measurable rhythm or cycle due to the gravitational pulls of the moon and sun. Tidal waters end where the rise and fall of the water surface can no longer be practically measured in a predictable rhythm due to masking by hydrologic, wind, or other effects."

21. Regulations codified at 33 C.F.R. § 328.4(b) define the landward limit of federal jurisdiction over tidal waters as the "high tide line."

22. Regulations codified at 33 C.F.R. § 328.3(d) define "high tide line" as "the line of intersection of the land with the water's surface at the maximum height reached by a rising tide" and "encompasses spring high tides and other high tides that occur with periodic frequency."

23. Regulations codified at 33 C.F.R. § 328.4(b) and (c) provide that, when adjacent non-tidal wetlands are present, federal jurisdiction extends beyond the ordinary high water mark to the limit of the adjacent wetlands.

24. Regulations codified at 33 C.F.R. § 328.3(b) define "wetlands" as "those areas

---

[1] EPA and the Corps have issued separate but parallel regulations defining the statutory and regulatory terms used in this Complaint. *See, e.g.,* 33 C.F.R. § 328.3(a) (2014) (Corps) and 40 C.F.R. § 230.3(s) (2014) (EPA). For brevity, we refer only to the Corps' regulations in this Complaint.

[2] This regulation was amended by the "Clean Water Rule," 80 Fed. Reg. 37,054 (June 29, 2015), to be effective August 28, 2015, but the amendment has been stayed pending resolution of challenges to the revised rule. *See In re EPA*, 803 F.3d 804 (6th Cir. 2015). Accordingly, the regulatory provisions cited in this Complaint at 33 C.F.R. § 328.3(a)-(f) refer to the provisions in effect prior to August 28, 2015. In any event, most of the activities in question occurred before the effective date of the Clean Water Rule and the Rule did not change the scope of CWA jurisdiction over tidal waters or wetlands as alleged in the Complaint.

1  that are inundated or saturated by surface or ground water at a frequency and duration sufficient
2  to support, and that under normal circumstances do support, a prevalence of vegetation typically
3  adapted for life in saturated soil conditions."

4      25.      Regulations codified at 33 C.F.R. § 328.3(c) define "adjacent" as "bordering,
5  contiguous, or neighboring." These regulations further provide: "Wetlands separated from other
6  waters of the United States by man-made dikes or barriers, natural river berms, beach dunes and
7  the like are 'adjacent wetlands.'" 33 C.F.R. § 328.3(c).

8      26.      CWA section 404(a), 33 U.S.C. § 1344(a), authorizes the Secretary of the Army,
9  acting through the United States Army Corps of Engineers ("Corps"), to issue permits for the
10 discharge of dredged or fill material into navigable waters ("CWA section 404 permit").

11     27.      Regulations codified at 33 C.F.R. § 323.2(c) define "dredged material" as
12 "material that is excavated or dredged from waters of the United States." The term "discharge of
13 dredged material" means "any addition of dredged material into, including any redeposit of
14 dredged material other than incidental fallback within, the waters of the United States." 33
15 C.F.R. § 323.2(d)(1).

16     28.      Regulations codified at 33 C.F.R. § 323.2(e) define "fill material" as "material
17 placed in waters of the United States where the material has the effect of: (i) Replacing any
18 portion of a water of the United States with dry land; or (ii) Changing the bottom elevation of
19 any portion of a water of the United States." Examples of such fill material include, but are not
20 limited to: "rock, sand, soil, clay, plastics, construction debris, wood chips, overburden from
21 mining or other excavation activities, and materials used to create any structure or infrastructure
22 in the waters of the United States." 33 C.F.R. § 323.2(e)(2).

23     29.      Regulations codified at 33 C.F.R. § 323.2(f) define "discharge of fill material" as
24 "the addition of fill material into waters of the United States," and includes, *inter alia*, placement
25 of fill that is necessary for the construction of any structure or infrastructure in a water of the
26 United States; the building of any structure, infrastructure, or impoundment requiring rock, sand,
27 dirt, or other material for its construction; site-development fills for recreational, industrial,
28 commercial, residential, or other uses; causeways or road fills; dams and dikes; and levees.

30. CWA section 309(b), 33 U.S.C. § 1319(b), authorizes the commencement of a civil action for appropriate relief, including a permanent or temporary injunction, against any person who violates CWA section 301(a).

31. Any person who violates CWA section 301(a), 33 U.S.C. § 1311(a), shall be subject to civil penalties of up to $37,500 per day for each violation occurring after January 12, 2009 and through November 2, 2015, and up to $52,414 per day for violations occurring after November 2, 2015 pursuant to CWA section 309(d), 33 U.S.C. § 1319(d), and 40 C.F.R. § 19.4 (as adjusted over time as required by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Pub. L. 101-410), as amended by the Debt Collection Improvement Act of 1996, and most recently, by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015 (28 U.S.C. § 2461 note; Pub. L. 114-74, Section 701)).

32. Each day that dredged or fill material remains in the place where it was discharged without authorization constitutes an additional and continuing violation of 33 U.S.C. § 1311(a). Unauthorized discharges into waters of the United States do not eliminate CWA regulatory jurisdiction, even if such unauthorized discharges have the effect of destroying waters of the United States.

33. Liability for violating CWA section 301(a), 33 U.S.C. § 1311(a), is strict, joint, and several.

## GENERAL ALLEGATIONS

*Point Buckler Island*

34. The CWA violations alleged in this civil enforcement action occurred on Point Buckler Island, an approximately 39-acre island located off the western tip of Simmons Island in the Suisun Marsh, Solano County. Point Buckler Island has been designated Solano County Assessor Parcel Number 0090-020-010. Point Buckler Island has also been known in the past as the Annie Mason Point Club or Club 801.

35. Defendant Sweeney purchased Point Buckler Island on or about April 19, 2011.

36. Defendant Sweeney transferred Point Buckler Island to Defendant Point Buckler Club on or about October 27, 2014.

37. Defendant Point Buckler Club is the current owner of Point Buckler Island.

38. Defendant Sweeney is and has been since at least October 2014 the principal, president, and/or managing partner of Defendant Point Buckler Club.

39. Defendant Sweeney has owned, operated, supervised, and/or controlled Point Buckler Island since at least April 2011 through today, whether in his individual capacity or as the principal, president, and/or managing partner of Defendant Point Buckler Club.

*Waters of the United States*

40. Point Buckler Island is surrounded by the waters of Suisun Bay and Grizzly Bay, which are part of the larger San Francisco Bay, an embayment of the Pacific Ocean.

41. Suisun Bay, Grizzly Bay, the San Francisco Bay, and the Pacific Ocean are navigable-in-fact waters that are currently used for, were used in the past for, and/or are susceptible for use in interstate or foreign commerce.

42. Suisun Bay, Grizzly Bay, the San Francisco Bay, and the Pacific Ocean are traditional navigable waters under 33 C.F.R. § 328.3(a)(1).

43. At the time Defendant Sweeney purchased Point Buckler Island and prior to the unauthorized activities alleged in this Complaint, seven natural tidal channels directly connected to the waters of Suisun Bay and Grizzly Bay reached into the interior of Point Buckler Island. Remnant portions of a former constructed borrow ditch on Point Buckler Island also connected directly to the waters of Suisun Bay and Grizzly Bay and to some of the natural tidal channels. These tidal channels and ditch remnants were open tidal waters regularly subject to the ebb and flow of the tide.

44. At the time Defendant Sweeney purchased Point Buckler Island and prior to the unauthorized activities alleged in this Complaint, with the exception of a small portion of the former levee on the eastern shore (approximately one-half acre), Point Buckler Island was below the high tide line, the landward limit of tidal waters under 33 C.F.R. § 238.4(b).

45. At the time Defendant Sweeney purchased Point Buckler Island and prior to the unauthorized activities alleged in this Complaint, with the exception of a small portion of the former levee on the eastern shore (approximately one-half acre), Point Buckler Island was a

1 traditional navigable water under 33 C.F.R. § 328.3(a)(1).

2     46. At the time Defendant Sweeney purchased Point Buckler Island and prior to the unauthorized activities alleged in this Complaint, with the exception of a small portion of the former levee on the eastern shore (approximately one-half acre) and the seven tidal channels and remnant ditch, Point Buckler Island consisted of areas inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and under normal circumstances did support, tidal marsh vegetation such as tule, bulrush, cattail, and reed, which are typically adapted for life in saturated soil conditions. These areas constitute "wetlands" within the meaning of 33 C.F.R. § 328.3(a)(7), (b).

    47. The United States Fish and Wildlife Service's National Wetlands Inventory map identifies Point Buckler Island as a wetland that is "estuarine intertidal emergent" and "persistent, regularly flooded." https://www.fws.gov/wetlands/data/Mapper.html. The San Francisco Estuary Institute's EcoAtlas map identifies Point Buckler Island as "tidal marsh" with tidal drainage features. http://ecoatlas.org/regions/ecoregion/bay-delta (last updated 2011).

    48. At the time Defendant Sweeney purchased Point Buckler Island and prior to the unauthorized activities alleged in this Complaint, the wetlands on Point Buckler Island directly abutted and were adjacent to the seven tidal channels and remnant ditch within the interior of Point Buckler Island and/or the surrounding waters of Suisun Bay and Grizzly Bay within the meaning of 33 C.F.R. § 328.3(c).

    49. At the time Defendant Sweeney purchased Point Buckler Island and prior to the unauthorized activities alleged in this Complaint, the wetlands on Point Buckler Island were "adjacent to" traditional navigable waters within the meaning of 33 C.F.R § 328.3(a)(7).

    50. Suisun Bay, including waters within Point Buckler Island, is designated critical habitat under the federal Endangered Species Act, 16 U.S.C. § 1531 *et seq.,* for several fish, including the threatened Southern Population Segment of the North American green sturgeon (*Acipenser medirostris*), 50 C.F.R. § 226.219, the endangered Sacramento River winter-run Chinook salmon (*Oncorhynchus tshawytscha*), 50 C.F.R. § 226.204, and the threatened Delta smelt (*Hypomesus transpacificus*), 50 C.F.R. § 17.95(e). Point Buckler Island is immediately

1  adjacent to pelagic habitats occupied by Delta smelt.  Prior to the unauthorized activities alleged
2  in this Complaint, Point Buckler Island's tidal waters and wetlands contributed to food web
3  productivity in support of the recovery of this species, especially as a food source for juveniles
4  and sub-adults.

5        51.    Point Buckler Island lies between the ocean and spawning grounds for the
6  threatened Central Valley Distinct Population Segment of steelhead trout (*Oncorhynchus mykiss*)
7  and the Evolutionary Significant Unit California Central Valley spring-run Chinook salmon
8  (*Oncorhynchus tshawytscha*).  Prior to the unauthorized activities alleged in this Complaint,
9  Point Buckler Island's tidal waters and wetlands provided feeding grounds and refuge from
10 predatory fish for young salmonids migrating from the Sacramento and San Joaquin Rivers
11 through San Francisco Bay on their way to the Pacific Ocean.

12       52.    Point Buckler Island is also located within waters identified as "essential fish
13 habitat" under the Magnuson-Stevens Fishery Conservation Act, 16 U.S.C. § 1801 *et seq.*, for
14 various fish species including, but not limited to, Chinook salmon (*Oncorhynchus tshawytscha*),
15 coho salmon (*Oncorhynchus kisutch*), starry flounder (*Platichthys stellatus*), English sole
16 (*Parophrys vetulus*), and northern anchovy (*Engraulis mordax*).

17       53.    At all times relevant to this civil enforcement action, with the exception of a small
18 portion of the former levee on the eastern shore (approximately one-half acre), Point Buckler
19 Island was and remains "waters of the United States" and "navigable waters" within the meaning
20 of CWA section 502(7), 33 U.S.C. § 1362(7).

21 *Unauthorized Activities*

22       54.    Between approximately May 2012 and February 2014, or at times better known to
23 the Defendants, the following activities occurred on Point Buckler Island:

24       a.   Defendant Sweeney and/or persons acting on his behalf excavated three
25           trenches.  These trenches were excavated in approximately one-half acre of
26           tidal waters and wetlands.
27       b.   Defendant Sweeney and/or persons acting on his behalf placed dredged
28           material from those three trenches (approximately 500-600 cubic yards) on the

Island. This dredged material was placed in tidal waters and wetlands.

    c. Defendant Sweeney and/or persons acting on his behalf placed two trailers and a wood pile on the Island. These structures were placed in tidal waters and wetlands.

55. Neither Defendant Sweeney nor persons acting on his behalf obtained a CWA section 404 permit for the activities described in Paragraph 54.b. and in Paragraph 54.c.

56. Between approximately February 2014 and October 2014, or at times better known to the Defendants, the following activities occurred on Point Buckler Island:

    a. Defendant Sweeney and/or persons acting on his behalf excavated a borrow ditch (approximately 4,430 feet in length) around the perimeter of Point Buckler Island. This borrow ditch was excavated in tidal waters and wetlands.

    b. Defendant Sweeney and/or persons acting on his behalf used the dredged material from the excavated borrow ditch to build a levee (approximately 4,710 feet in length) parallel to the borrow ditch (the "constructed levee"). This levee was constructed in tidal waters and wetlands. The constructed levee resulted in the placement of an estimated 8,586 cubic yards of dredged material in tidal waters and wetlands.

    c. Defendant Sweeney and/or persons acting on his behalf installed a two-foot diameter culvert with flap gates at each end in the constructed levee near the southwest corner of the site. This structure is capable of allowing water to flow between Suisun Bay and the borrow ditch and interior of Point Buckler Island, but the tidal flap gates have remained closed since installation. This structure was constructed in tidal waters and wetlands.

    d. The constructed levee enclosed Point Buckler Island and cut off all seven natural tidal channels on Point Buckler Island. The constructed levee thus has blocked all tidal flow into and over Point Buckler Island through at least December 2016, causing the majority of tidal marsh and tidal channels on the Island to dry out and wetland vegetation to perish.

57. Neither Defendant Sweeney nor persons acting on his behalf obtained a CWA section 404 permit for the activities described in Paragraph 56.b. and in Paragraph 56.c.

58. Between approximately October 2014 and May 2016, or at times better known to the Defendants, the following activities occurred on Point Buckler Island:

   a. Defendant Sweeney and/or persons acting on his behalf and at the direction, control, and authority of Defendant Point Buckler Club, excavated four crescent-shaped basins. These crescent-shaped basins were excavated in tidal waters and wetlands.

   b. Defendant Sweeney and/or persons acting on his behalf and at the direction, control, and authority of Defendant Point Buckler Club, placed dredged material from the four crescent-shaped basins on the Island. This dredged material was placed in tidal waters and wetlands.

   c. Defendant Sweeney and/or persons acting on his behalf and at the direction, control, and authority of Defendant Point Buckler Club, graded a road through the center of Point Buckler Island. The road was graded through tidal waters and wetlands.

   d. Defendant Sweeney and/or persons acting on his behalf and at the direction, control, and authority of Defendant Point Buckler Club, placed shipping containers, trailers, helicopter pads, wind-break platforms, and artificial turf on the Island. These structures were placed in tidal waters and wetlands.

   e. Defendant Sweeney and/or persons acting on his behalf and at the direction, control, and authority of Defendant Point Buckler Club, used dredged material to build a ramp outside the constructed levee on the western end of Point Buckler Island. The ramp was constructed in tidal waters and wetlands.

59. Neither of the Defendants, nor persons acting on their behalf, obtained a CWA section 404 permit for the activities described in Paragraph 58.b., in Paragraph 58.c., in Paragraph 58.d., and in Paragraph 58.e.

60. The unauthorized excavation of and placement of dredged or fill material in the

Island's tidal marsh directly eliminated estuarine and wetland habitats and blocked and degraded most of Point Buckler Island's other surface water and wetland habitats.  These unauthorized discharges have adversely impacted many species of plants, fish and wildlife, including protected endangered species.  These discharges have prevented longfin smelt, a specifies of concern, from being able to access spawning grounds and young salmonids from accessing feeding grounds.  These unauthorized discharges have cut off the export of food material from the Island's interior marshes which support the threatened delta smelt.  The unauthorized discharges likely resulted in significant impacts to threatened or endangered species of fish and adversely impacted other species, including ducks, wading birds, and river otters. Degradation of wetland plant species through prolonged draining of the marsh has resulted in an increase of noxious invasive perennial pepperweed.  Finally, failure by the Defendants to seek and obtain authorization for their discharges prevented the Corps and other permitting agencies from carrying out their responsibilities under the ESA to protect the important characteristic of Point Buckler Island and minimize harmful impacts.

## COUNT ONE

### (As to Defendant Sweeney)

61. The United States repeats and realleges the allegations set forth in Paragraphs 1 through 60.

62. Defendant Sweeney is a "person" under CWA section 502(5), 33 U.S.C. § 1362(5).

63. Defendant Sweeney and/or persons acting on his behalf used earthmoving and other mechanized equipment to conduct the activities on Point Buckler Island described in Paragraph 54.b. (placement of dredged material excavated from trenches), Paragraph 54.c. (placement of two trailers and a wood pile), Paragraph 56.b. (placement of dredged material excavated from borrow ditch), and Paragraph 56.c. (installation of culvert and tidal flap gate). This equipment constitutes a "point source" under CWA section 502(14), 33 U.S.C. § 1362(14).

64. The activities on Point Buckler Island described in Paragraph 54.b. (placement of dredged material excavated from trenches) and Paragraph 56.b. (placement of dredged material

excavated from borrow ditch) constitute discharges of "dredged material" within the meaning of 33 C.F.R. § 323.2(c)-(d) and resulted in discharges of "pollutants" within the meaning of CWA section 502(6), 33 U.S.C. § 1362(6).

65. The activities on Point Buckler Island described in Paragraph 54.c. (placement of two trailers and a wood pile) and Paragraph 56.c. (installation of culvert and tidal flap gate) constitute discharges of "fill material" within the meaning of 33 C.F.R. § 323.2(e)-(f) and resulted in discharges of "pollutants" within the meaning of CWA section 502(6), 33 U.S.C. § 1362(6).

66. The activities on Point Buckler Island described in Paragraph 54.b. (placement of dredged material excavated from trenches), Paragraph 54.c. (placement of two trailers and a wood pile), Paragraph 56.b. (placement of dredged material excavated from borrow ditch), and Paragraph 56.c. (installation of culvert and tidal flap gate) resulted in discharges of pollutants into "waters of the United States" within the meaning of CWA section 502(7), 33 U.S.C. § 1362(7), and implementing regulations.

67. Neither Defendant Sweeney nor persons acting on his behalf obtained a CWA section 404 permit for these activities, as required and authorized, respectively, by CWA sections 301(a) and 404, 33 U.S.C. §§ 1311(a) and 1344.

68. The discharges of dredged or fill material caused by these activities violated and continue to violate CWA section 301(a), 33 U.S.C. § 1311(a).  Each day that such material remains in place constitutes a separate violation of CWA section 301(a), 33 U.S.C. § 1311(a).

69. Unless enjoined, Defendants and/or persons acting on their behalf, or with Defendants' consent and/or knowledge, are likely to continue to discharge dredged or fill material into and/or to allow dredged or fill material to remain at Point Buckler Island in violation of CWA section 301, 33 U.S.C. § 1311.

**COUNT TWO**

**(As to Defendant Sweeney and Defendant Point Buckler Club)**

70. The United States repeats and realleges the allegations set forth in Paragraphs 1 through 69.

71.     Defendant Sweeney and Defendant Point Buckler Club are each a "person" under CWA section 502(5), 33 U.S.C. § 1362(5).

72.     Defendant Sweeney and/or persons acting on his behalf and at the direction, control, and authority of Defendant Point Buckler Club, used earthmoving and other mechanized equipment to conduct the activities on Point Buckler Island described in Paragraph 58.b. (placement of dredged material excavated from crescent-shaped basins), Paragraph 58.c. (road grading), Paragraph 58.d. (placement of shipping containers, trailers, helicopter pads, wind-break platforms, and artificial turf), and Paragraph 58.e. (ramp construction).  This equipment constitutes a "point source" under CWA section 502(14), 33 U.S.C. § 1362(14).

73.     The activities on Point Buckler Island described in Paragraph 58.b. (placement of dredged material excavated from crescent-shaped basins), Paragraph 58.c. (road grading), and Paragraph 58.e. (ramp construction) constitute discharges of "dredged material" within the meaning of 33 C.F.R. § 323.2(c)-(d) and resulted in discharges of "pollutants" within the meaning of CWA section 502(6), 33 U.S.C. § 1362(6).

74.     The activities on Point Buckler Island described in Paragraph 58.d. (placement of shipping containers, trailers, helicopter pads, wind-break platforms, and artificial turf) constitute discharges of "fill material" within the meaning of 33 C.F.R. § 323.2(e)-(f) and resulted in discharges of "pollutants" within the meaning of CWA section 502(6), 33 U.S.C. § 1362(6).

75.     The activities on Point Buckler Island described in Paragraph 58.b. (placement of dredged material excavated from crescent-shaped basins), Paragraph 58.c. (road grading), Paragraph 58.d. (placement of shipping containers, trailers, helicopter pads, wind-break platforms, and artificial turf), and Paragraph 58.e. (ramp construction) resulted in discharges of pollutants into "waters of the United States" within the meaning of CWA section 502(7), 33 U.S.C. § 1362(7), and implementing regulations.

76.     Neither of the Defendants, nor persons acting on their behalf, obtained a CWA section 404 permit for these activities, as required and authorized, respectively, by CWA sections 301(a) and 404, 33 U.S.C. §§ 1311(a) and 1344.

77.     The discharges of dredged or fill material caused by these activities violated and

continue to violate CWA section 301(a), 33 U.S.C. § 1311(a).  Each day that such material remains in place constitutes a separate violation of CWA section 301(a), 33 U.S.C. § 1311(a).

78. Unless enjoined, Defendants and/or persons acting on their behalf, or with Defendants' consent and/or knowledge, are likely to continue to discharge dredged or fill material into and/or to allow dredged or fill material to remain at Point Buckler Island in violation of CWA section 301, 33 U.S.C. § 1311

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully requests that this Court order the following relief:

1. Permanently enjoin Defendants from discharging or causing the discharge of dredged or fill material or other pollutants into any water of the United States except as in compliance with the CWA;

2. Compel Defendants, at Defendants' own expense and at the direction of EPA, to restore the impacted waters of the United States and mitigate for impacted waters of the United States, as appropriate;

3. Assess and direct Defendants to pay civil penalties;

4. Award the United States costs and disbursements in this action; and

5. Grant the United States such other relief as the Court may deem just and proper.

Respectfully submitted,

JOHN C. CRUDEN
Assistant Attorney General
Environment and Natural Resources Division

Dated:  January 18, 2017     /s/ *Rochelle L. Russell*
ROCHELLE L. RUSSELL, Trial Attorney
U.S. Department of Justice
301 Howard Street, Suite 1050
San Francisco, CA 94105
(415) 744-6566
Rochelle.Russell@usdoj.gov

OF COUNSEL:
BRETT MOFFATT, EPA Region 9, Assistant Regional Counsel