UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, | Case No. 2:17-cv-00112-KJM-SCR |
| Plaintiff, | ORDER |
| v. | |
| John Donnelly Sweeney, et al., | |
| Defendants. | |

Following a bench trial this court found John Donnelly and Point Buckler Club, LLC had violated and at the time remained in violation of 33 U.S.C. §§ 1311 and 1344 of the Clean Water Act (CWA). Order (Sept. 1, 2020) at 95–96, ECF No. 180. The court found an injunction was necessary to restore Point Buckler Island and used the government's restoration plan as a substantive guide for defendants to present a restoration plan to the government. *See* Remedy Order (Dec. 9, 2022) at 13, ECF No. 210. On January 26, 2023, the court specially referred the identification of a restoration plan to Magistrate Judge Jeremy Peterson under 28 U.S.C. § 636(b)(3).[1] *See* Order (Jan. 26, 2023), ECF No. 223. On August 15, 2024, the magistrate judge filed findings and recommendations, which were served on the parties, and

---

[1] Given Magistrate Judge Peterson's history with this case, and having consulted with the assigned magistrate judge, the court is requesting that the Chief Judge reassign Judge Peterson as the magistrate judge in this case to achieve judicial efficiency.

1

which contained notice that any objections to the findings and recommendations were to be filed within fourteen days. *See* F&Rs (Aug. 15, 2024), ECF No. 278. Defendants filed objections on August 29, 2024, ECF No. 279, and the government filed a reply to defendants' objections on September 12, 2024, ECF No. 283. The court has considered both parties' briefs.[2] On January 24, 2025, the court received a Notice of Transfer from the government on the sale of Point Buckler Island but has received no further filings. ECF No. 290. The court issues the order absent any indication from the parties it should not proceed and with the understanding it continues to have jurisdiction over this case.

The court presumes that any findings of fact are correct. *See Orand v. United States*, 602 F.2d 207, 208 (9th Cir. 1979). The magistrate judge's conclusions of law are reviewed de novo. *See Robbins v. Carey*, 481 F.3d 1143, 1147 (9th Cir. 2007) ("[D]eterminations of law by the magistrate judge are reviewed de novo by both the district court and [the appellate] court[.]"). Having reviewed the file, and carefully considered the case as a whole, the court finds the findings and recommendations to be supported by the record and by the proper analysis.

I. **DEFENDANTS' OBJECTIONS**

Defendants claim the magistrate judge made "seven kinds of errors." Objs. at 7.[3] Specifically, defendants argue (1) the magistrate judge improperly considered post-trial evidence, (2) did not comply with the court's procedures, (3) this court and the magistrate judge should have recused on partiality grounds, and that the magistrate judge (4) should not have considered

---

[2] On September 26, 2024, defendants filed a document they styled as a "Reply," ECF No. 283. The government opposes the court's consideration of the filing, arguing it violates Local Rule 304. *See* Opp'n at 1, ECF No. 286. The court agrees. Local Rule 304 allows any party to file objections within fourteen days of the issuance of the Magistrate Judge's Findings and Recommendations. *See* E.D. Cal. L.R. 304(b). A party may also file a response to any objections within fourteen days of the service of the objections. *See* E.D. Cal. L.R. 304(d). Absent court consent those are the only filings allowed. The court therefore will not consider the arguments made in defendants' "Reply," ECF No. 283.

[3] The court notes defendants titled their objections "Objections to Magistrate Judge's Findings and Recommendations and Request for Reconsideration by the District Court of Magistrate Judge's Ruling." ECF No. 279. The defendants make no distinction in the text of the brief between these two requests. The court construes the filing solely as objections. *See* E.D. Cal. L.R. 304(b).

the government's evidence because it did not "pass muster" under Federal Rule of Evidence 702, (5) did not consider the details of defendants' plan, (6) should have considered whether the proposed plans complied with the *Deaton* factors, and (7) should have more fully examined defendants' objections to the details of the Government's plan. *Id.* at 7–9.  Because many of these objections involve the procedures the court instructed the magistrate judge to use in determining a restoration plan for Point Buckler Island, the court reviews its procedural instructions first.

In the Remedy Order, this court ordered the parties to craft a detailed remedial order on the following terms:

> Within 30 days of this judgment, defendants shall, through professional(s) with the requisite qualifications propose to the United States a detailed submission including a schedule and plan for implementing the United States' Restoration Plan for Point Buckler Island, taking into account the current state of the island and how that may affect the plan.  The United States shall, within 30 days of service, provide defendants with its comments.  If the United States does not provide comments, defendants shall file their submissions with the Special Master and comply with it.  If the United States provides comments, defendants shall: (i) within 14 days of service, revise their submission consistent with those comments and file the revised submission with the Court; and (ii) comply with the revised submission.

Remedy Order at 32.  In a footnote, the court noted:

> If defendants have objections to the United States' comments, then defendants must communicate them in writing to the United States within seven days.  If the parties are unable to resolve their dispute, defendants may within 14 days of service of the United States' comments, file a motion before the Special Master articulating defendants' objections and their bases.  On any such motion, defendants shall bear the burden of persuading the Special Master that the United States' comments are unreasonable in light of the court's order and judgment, the evidence adduced at trial, or the objective of this injunctive relief.  In that scenario, defendants shall file and comply with the schedule and plan that accords with the Special Master's decision.  Defendants filing of a motion does not automatically stay any obligation set forth in this order.  The parties must either stipulate in writing to a stay, or defendants must specifically request a stay.  Lastly, if defendants do not file a motion for review, then they will waive any such objections.

*Id.* at 32 n.12.  The court ended up deferring appointment of a special master and, after providing advance notice to the parties, instead arranged to specially assign Judge Peterson as the

3

responsible magistrate judge with powers under 28 U.S.C. § 636(b)(3) to identify a restoration plan. *See* Order (Jan. 26, 2023) at 3–4. When the court referred the task of identifying a restoration plan to Judge Peterson, it incorporated the procedures set forth above by allowing him to "hold hearings as he deems necessary to determine the proper parameters of the plan, as consistent with the procedure specified in this court's prior order and with section 636." *Id.* at 4. The court also instructed the parties to meet and confer and file a Joint Status Report addressing whether any further action was necessary given the current conditions of the island. *See id.* Upon receipt of this Joint Status Report, the court instructed Judge Peterson to "conduct proceedings as appropriate under the circumstances and within a reasonable period of time make a recommendation to this court regarding the details of the restoration plan for purposes of achieving injunctive relief as ordered by the court." *Id.*

Defendants' first objection to the findings and recommendations is the magistrate judge improperly considered post-trial evidence. Objs. at 7, 16–19. Defendants argue the magistrate judge gave the government a second bite at the apple by allowing the government to submit two revised restoration plans. *See id.* at 17. Defendants also argue this court agreed and barred the magistrate judge from considering post-trial evidence because the action was not bifurcated. *See id.* at 18–19. The action, however, was bifurcated. *See* Order (Sept. 1, 2020) at 96, ECF No. 180; Remedy Order at 6. While this court did not rely on post-trial evidence in its remedy order, *see* Remedy Order at 7, it did not bar the use of post-trial evidence, *see id.* at 9 n.4. Further, the court ordered the parties to provide the magistrate judge with evidence of the current condition of the island so he could properly craft a restoration plan. *See* Order (Jan. 26, 2023) at 4. That task necessarily involves consideration of post-trial evidence. The objection is overruled.

Second, defendants object that the magistrate judge did not comply with this court's procedures for determining a restoration plan. Objs. at 19–21. Specifically, defendants argue they submitted their initial restoration plan to the government on January 21, 2023, and the government did not provide comments on the plan within 30 days as required. *Id.* at 20. Given the government's failure to provide comments, defendants argue, the magistrate judge was obligated to accept defendants' restoration plan. *Id.* But the government did provide comments

4

within thirty days. *See* Gov't Letter Dated 2/7/23 Obj. to Defs' Restoration Plan, ECF No. 229-1. Defendants argue this letter was insufficient because the government did not provide "technical" comments in the letter. Joint Status Rep. (Feb. 15, 2023) at 9, ECF No. 229; Objs. at 20 n.4. But this court never required the comments to be technical. *See* Remedy Order at 32. The Remedy Order did require defendants to incorporate the government's comments into a revised submission or, within fourteen days, file a motion with the magistrate judge. *See id.* n.12. Defendants filed no such motion and did not incorporate the government's comments; therefore, the magistrate judge was not obligated to accept their revised restoration plan.[4] The objection is overruled.

Third, defendants argue this action should have been transferred to another judge because this court allegedly allowed the government to improperly introduce new evidence post-trial. Objs. at 21–28. Defendants have raised this issue twice before: in their response to the government's remedy brief, *see* ECF No. 198 at 12–14, and in its motion for a new trial, *see* ECF No. 216 at 23. The court previously rejected defendants' arguments, noting in relevant part "judges must recuse 'only if the bias or prejudice stems from an extrajudicial source and not from conduct or rulings made during the course of the proceeding.'" Order (Feb. 16, 2023) at 4–5, ECF No. 230 (quoting *Pau v. Yosemite Park & Curry Co.*, 928 F.2d 880, 885 (9th Cir. 1991)). Defendants now claim the Supreme Court impliedly overturned *Pau* in *Liteky v. United States*, 510 U.S. 540, 551, 554–55 (1994). Objs. at 23. But *Litecky* did not overturn *Pau*. In fact, the Court upheld the extrajudicial source doctrine. *See Litecky*, 510 U.S. at 554. What defendants cite is the Court's exception to the rule: when a ruling "is so extreme as to display clear inability to render fair judgment," it can reflect bias under 28 U.S.C. § 455. *Id.* at 551. Defendants have pointed to no evidence that this court has engaged in such extreme behavior. Nor have they put forth any evidence that the magistrate judge is so biased either. The objection is overruled.

/////

---

[4] The same process played out with respect to defendants' second restoration plan, submitted on June 30, 2023. ECF No. 248. The government lodged objections within 30 days, *see* ECF No. 249, and defendants did not incorporate the comments into a revised plan or file a motion with the court within 14 days.

Fourth, defendants argue the magistrate judge should have considered defendants' objections that the experts the government used in its final restoration plan did not satisfy Federal Rule of Evidence 702. Objs. at 28–33. Stuart Siegel was the primary author of the government's first updated restoration plan. *See* ECF No. 242-1. The court previously has accepted Siegel as an expert in "restoration design, planning and construction of tidal channels and marsh systems." Remedy Order at 8 n.3. Peter Baye and Bruce Herbold were the primary authors of the second updated plan. *See* ECF No. 255-1. Portions of the plans also were prepared by Scott McLaughlin of Northgate Environmental Management. *Id.* at 42. Another entity, Hanford ARC, is also identified on the cover page of the second plan. *See id.* at 1. The court also already has accepted both Baye and Herbold as experts. *See* Remedy Order at 11 n.5, 16 n.6; Trial Tr. 404:24–406:7, 548:17–549:17, ECF No. 168. Defendants argue the other contributors, McLaughlin and presumably those who work at Hanford, of the plan should have been qualified as experts. Objs. at 32. As the government points out, experts can use and rely upon data and even confer with other experts if experts in the field generally rely upon such practices when forming opinions. *See* Opp'n to Defs.' Objs. at 14. Here, three court-qualified experts properly relied on scientific data prepared by McLaughlin and the employees at Hanford ARC. Defendants also argue the experts helping to prepare the government's second updated plan provided conclusory opinions unsupported by evidence. Objs. at 28–31. This argument is unconvincing. The government's experts rendered conclusions in the second updated plan based on extensive data collection occurring after the magistrate judge was appointed to oversee the identification of a restoration plan. *See* ECF No. 242-1 at 14–15; ECF No. 255-1 at 8. The objection is overruled.

Fifth, defendants argue the magistrate judge incorrectly dismissed defendants' restoration plans in part because he mischaracterized the court's remedy order. Objs. at 33–37. Defendants advocated a return to pre-existing conditions on the island, which the magistrate judge ruled "flatly ignored the district judge's rejection of this approach." F&Rs at 19. The magistrate judge's assessment is correct. The court in its remedy order ruled that the island needed to return to its 2011 state in a functional sense, not that it could merely or passively be returned to that state. Remedy Order at 11–12. In other respects, the magistrate judge appropriately considered

defendants' plans and reasonably dismissed them for lacking any basis in scientific data. *See* F&Rs at 9–11. The objection is overruled.

Sixth, defendants argue the magistrate judge should have considered the *Deaton* factors when authorizing a restoration plan, particularly the defendants' claims to poverty. Objs. at 37–45. Defendants renewed this objection in their Request for Reconsideration, filed October 28, 2024. ECF No. 288. Under *Deaton*, courts consider three factors when evaluating restoration proposals: "(1) whether the proposal would confer maximum environmental benefits, (2) whether it is achievable as a practical matter and (3) whether it bears an equitable relationship to the degree and kind of wrong it is intended to remedy." *United States v. Deaton*, 332 F.3d 698, 714 (4th Cir. 2003) (internal marks and citations omitted). This court already has considered defendants' poverty claims under the third *Deaton* factor: whether the plan is achievable as a practical matter. *See* Remedy Order at 18–21. The court found the record showed defendants had an ability to pay for the restoration. *See id.* at 19. The magistrate judge appropriately declined to consider this argument. *See* F&Rs at 23.[5] Defendants also argue the magistrate judge exceeded his authority by mandating a plan that goes beyond restoring the island to its 2011 form. Objs. at 43–44. But, as noted above, the point is to restore the island's functions to its 2011 levels, not to restore the island to its earlier state. The magistrate judge correctly authorized a plan that will accomplish the task ordered by the court. The objection is overruled.

Seventh, defendants argue the magistrate judge failed to consider many of their technical objections to the government's second revised restoration plan. Objs. at 45–67. This section of defendants' brief illustrates why the magistrate judge did not adopt defendants' restoration plans in the first place: it is completely barren of expert testimony or any other technical evidence that would support defendants' assertions. The objection is overruled.

## II.   APPOINTMENT OF A SPECIAL MASTER

Post-trial special masters may be appointed under Rule 53(a)(1)(C) to assist the court in framing and enforcing complex decrees and similar matters. *See, e.g., Wishtoyo Found. v. United*

---

[5] The court will address defendants' Motion for Reconsideration, ECF No. 288, more fully in a forthcoming order.

*Water Conservation Dist.*, No 16-3869, 2018 WL 7571315, at *5 (C.D. Cal. Dec. 1, 2018), *aff'd*, 795 App'x 541 (9th Cir. 2020) (appointing special master to monitor defendants' compliance with permanent injunction following its operation and maintenance of dam violating Endangered Species Act). While such appointments are rare, district courts have discretion to appoint special masters to enforce judicial decrees in appropriate cases. *See, e.g.*, *United States v. Suquamish Indian Tribe*, 901 F.2d 772, 774–75 (9th Cir. 1990) (upholding decision by district court to appoint special master to determine question of fishing rights); *City of Long Beach v. Monsanto Co.*, No. 16-3493, 2020 WL 7060140, at *5 (C.D. Cal. Nov. 25, 2020) (appointing special master in case involving complex consent decree monitoring environmental injunction).

Having carefully considered this matter and having previously deferred the question, the court is now prepared to appoint a special master to oversee the mandatory and prohibitory injunctions enjoining the defendants and the implementation of the approved restoration plan. For the purposes of continuity and judicial efficiency, the court tentatively plans to appoint Magistrate Judge Jeremy Peterson as special master. Judge Peterson will have authority to receive evidence, hold hearings, make factual findings, hear and resolve motions and issue all necessary orders for the purposes of enforcing the injunction and implementing the approved restoration plan. The parties within 30 days of the publication of this order may show cause if any they have why Judge Peterson should not be appointed as a special master, as proposed here. *See* Fed. R. Civ. P. 53(b)(1).

### III.     CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. The Findings and Recommendations filed August 15, 2024, are adopted in full.

2. The government's Restoration Implementation Plan, ECF No. 255-1, as an update to the 2018 Restoration Plan for Point Buckler Island, ECF No. 132 at 81–87, is adopted and defendants are ordered to implement the plan, including the monitoring requirements, except for the removal of structures that do not qualify as pollutants as determined in this court's liability order, ECF No. 180.

3. The parties must show cause if any they have within 30 days why Magistrate Judge Peterson should not be appointed special master to oversee the implementation of the government's Restoration Implementation Plan for Point Buckler Island.

This order resolves ECF No. 278.

IT IS SO ORDERED.

DATED: February 12, 2025.

SENIOR UNITED STATES DISTRICT JUDGE