UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, | No. 2:17-cv-00112-KJM-JDP |
| Plaintiff, | ORDER |
| v. | |
| John Donnelly Sweeney, et al., | |
| Defendants. | |

Defendant John Donnelly Sweeney seeks to amend or alter the judgment of the court or obtain a new trial based on manifest errors of fact he says the court made during his 2019 trial and based upon the changed conditions of the island and of his finances since 2019. As detailed more fully below, the court **denies** Sweeney's request.

**I.    BACKGROUND**

Following a bench trial, the court found Sweeney had violated, and remained in violation of, 33 U.S.C. §§ 1311 and 1344 of the Clean Water Act by polluting "waters of the United States" in and around Point Buckler Island and by constructing an unlawful levee around the island. Liability Order & J. (Sept. 1, 2020) at 4–5, ECF No. 180. The court initially declined to make a finding on an appropriate remedy but eventually found an injunction was warranted to functionally restore the island to its previous condition. *See* Remedy Order at 10 (Dec. 9, 2022), ECF No. 210. The court found the government's restoration plan to be useful as a guide for the

1

injunction and initially considered appointing a special master who would oversee the execution of the government's plan while adapting it to the present conditions of the island. *See id.* at 32. As part of its finding, based on the totality of the record before it, the court found the guide was achievable as a practical matter. *See id.* at 19–21. It rejected Sweeney's evidence that he was unable to pay for the costs of restoration because it was convinced by the trial testimony of Dr. Daniel Leistra-Jones, an expert rebuttal witness for the plaintiff, who stated in relevant part, "Mr. Sweeney individually can pay approximately $864,000 for the financial obligations of a judgment in this matter without experiencing undue financial hardship." *Id.* at 19 (quoting Trial Tr. at 1110:17–20, ECF No. 168-7). The court found Sweeney's own counter-proposal—instead of functionally restoring the island, he would "operate Point Buckler as a duck club"—to support an inference, in the absence of evidence to the contrary, that Sweeney had "significant resources." *Id.* at 20. The court also found the restoration plan to be achievable in part "because of its indefiniteness:" it was a "substantive guide" not a "roadmap" and Sweeney could, to save costs, propose a "less-expensive yet as-effective plan." *Id.* at 21.

The court eventually did not appoint a special master at that time and instead referred the identification of a final restoration plan, using the government's plan as a guide, to Magistrate Judge Jeremy Peterson under 28 U.S.C. § 636(b)(3). *See* Order (Jan. 26, 2023), ECF No. 223. The court allowed Sweeney to propose a plan for restoring Point Buckler Island but required it be based on expert testimony and that it be consistent with the United States' Restoration plan. *See* Remedy Order at 32. Magistrate Judge Peterson made findings in connection with recommending a final restoration plan, *see* ECF No. 278, that Sweeney had failed to obey the court's instructions in its remedy order by failing to propose a remedy plan based on expert opinions and by failing to propose a plan "consistent with the United States' Restoration Plan for Point Buckler Island," *id.* at 17–18.

Sweeney moved the court to reconsider its initial judgment making three arguments. First, similar state court judgments against Sweeney made the judgment against him in this court subject to a stay or a dismissal on mootness or res judicata grounds. *See generally* Defs.' Mot. Reconsideration (Mot.), ECF No. 216. Second, Sweeney's finances had become much worse

since the court issued the judgment, rendering him unable to pay for the restoration of the island, and the court had made a manifest error of fact when determining Sweeney could pay for the island's restoration in the 2019 trial. *See id.* Third, conditions on the island had changed to the point where the government's plan for restoration of the island was no longer valid. *See id.* The court denied Sweeney's request for a stay or dismissal based on related state court actions and stayed his request for reconsideration based upon the changed conditions of Point Buckler Island and his finances until after Magistrate Judge Peterson issued findings and recommendations regarding a proposed final restoration plan. *See* Order (Feb. 16, 2023), ECF No. 230.

After Judge Peterson made his findings and recommendations, Sweeney has moved again for the court to consider his changed financial circumstances and either alter or amend the judgment, *see* ECF No. 288. The government opposes Sweeney's request. *See* Opp'n, ECF No. 220; Response, ECF No. 289. Now that the court has accepted Magistrate Judge Peterson's findings and recommendations, *see* ECF No. 291, it denies Sweeney's request for relief from judgment based on the changed conditions of the island, as the restoration plan approved by the court considers the changed conditions on the island since 2019, *see id.* The court resolves the remainder of Sweeney's motion below.

## II. PURPORTED MANIFEST ERRORS OF FACT

Sweeney requests relief based on the court's committing "manifest errors of fact" relating to whether Sweeney had the ability pay for the restoration of Point Buckler Island based on the 2019 trial, either in the form of an amended judgment or a new trial under Rules 59(a)(2), 59(e), and 52(b). *See* Mot. at 7–8. Under Rule 59(a)(2), courts can "open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." For example, courts reopen a judgment when there has been a "manifest error of fact . . . ." *Brown v. Wright*, 588 F.2d 708, 710 (9th Cir. 1978). Under Rule 59(e), courts can alter or amend a judgment "to correct manifest errors of law or fact upon which the judgment is based," *Turner v. Burlington Northern Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003), and, under Rule 52(b), a court may amend its findings when it

/////

3

determines it needs to correct "findings of fact which are central to the ultimate decision," *Crane-McNab v. County of Merced*, 773 F. Supp. 2d 861, 873 (E.D. Cal. 2011).

Sweeney contends the court unfairly brushed aside his arguments at trial that he could not pay for the restoration of Point Buckler Island. Mot. at 19. Sweeney offers no new evidence to support his claim that he was unable to pay for the restoration of the island in 2019. Nor did he provide sufficient evidence during trial to support his position then or now. Indeed, one of the court's findings was that Sweeney "put forward no evidence showing Mr. Sweeney is unable to pay." Remedy Order at 19. Sweeney did not put forward any evidence of his financial status during the remedy phase. *See id.* at 24. He had every opportunity to prove his financial status but evidently chose not to. *See id.* The only evidence he provided was his own testimony, which the court found to be uncompelling "brief remarks." *Id.* at 19. The court gave weight to the plaintiff's expert, Daniel Leistra-Jones, who testified in detail regarding Sweeney's finances. *See id.* at 19. While Sweeney takes issue with the court's characterization of his testimony, *see* Mot. at 19, as the trier of fact, the court did not commit manifest error by assigning more weight to credible witness testimony and less weight to cursory testimony it found less credible.

Sweeney's motion for a new trial or for an amended judgment based on manifest errors of fact during his trial is denied.

**III.   CHANGED FINANCES**

Sweeney also argues for a new trial or relief from the judgment under Rules 59(a)(2), 59(e), 60(b)(5) and 60(b)(6) based on evidence of his deteriorating finances since 2019. Under Rule 59(a)(2), courts can reopen the judgment if one has been entered based upon "newly discovered evidence." *Brown*, 588 F.2d at 710. Under Rule 59(e), a court can amend a judgment based upon newly discovered evidence or if the motion is necessary to prevent a manifest injustice. *See Turner*, 338 F.3d at 1063. Under Rule 60(b)(5), a court can modify its decrees according to equity and, under Rule 60(b)(6), a court may alter its judgment for any other reason, but the party seeking reconsideration under Rule 60(b)(6) must "show extraordinary circumstances justifying the reopening of a final judgment." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) (internal marks and citations omitted). "A motion for reconsideration may not be

4

used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (internal marks and citations omitted).

    Sweeney argues the key piece of evidence regarding his ability to pay was provided by Daniel Leistra-Jones, who testified that if Sweeney were to combine the roughly $300,000 in excess cash he had available, and the difference between the sale of his home (valued by Leistra-Jones at $1.58 million) and the cost of a new home priced in the median range for homes in Solano County (valued at $395,000), less his legal costs (estimated at $500,000), he would have over $800,000 available to fund the restoration of Point Buckler Island. *See* Mot. at 14–15; Remedy Order at 19. Based on new information Sweeney provides, Sweeney's home sold for $1.72 million, *see* Mot. at 15, and he bought his new home for somewhere around $500,000, *see* Bazel Decl. Ex. 12 at 426, ECF No. 216-1. Sweeney further admits he had between $250,000–$350,000 in excess cash to spend on cryptocurrency trading. Sweeney Decl. ¶ 2, ECF No. 216-2. In other words, he has had as much money as Leistra-Jones estimated to fund the restoration of Point Buckler Island if not more. *See* Remedy Order at 19. He has presented no new evidence that materially undermines Leistra-Jones' calculations.

    Sweeney makes several arguments in support of his position. First, he argues his legal fees are much higher than $500,000, and actually are close to $2 million. Sweeney Decl. ¶ 13. Second, he argues he does not have excess cash on hand because he lost between $250,000–$350,000 in crypto-currency trading. *See id.* ¶ 2. Third, he argues multiple judgments against him by California state courts related to Point Buckler Island have crippled his finances and have stretched his liabilities to nearly $10 million. Mot. at 18. The government contests many of these assertions and also notes Sweeney received $300,000 in disaster relief loans in connection with the pandemic that Sweeney did not disclose in his declaration. Opp'n at 23.

    Sweeney had an unfettered opportunity to present evidence of his legal costs at trial and at the remedy phase of the proceedings and chose not to present the evidence then. *See* Remedy Order at 19, 24. He also had opportunities to present evidence on the financial ramifications of other potential judgments against him both at trial and at the remedy phase, and chose not to.

1  Moreover, Sweeney had opportunities to provide his own restoration plan to Magistrate Judge
2  Peterson but failed to abide by the court's instructions to do so.  *See* F&Rs at 17–18.  That
3  Sweeney evidently decided to risk some of his resources through crypto-currency trading does not
4  provide a basis for the court's reconsidering its original determination that he can pay for
5  restoration costs; his trading activity could even support an inference that he had money to spare.
6     In sum, the court declines to grant relief because Sweeney could reasonably have raised
7  his arguments at an earlier point in the litigation, the evidence he presents now does not challenge
8  Leistra-Jones' findings on his finances and it would not work a manifest injustice to decline to
9  hear new evidence at this late stage in the litigation, particularly when the new evidence does not
10 suggest it would lead to a materially different record if considered.  *See Marlyn Nutraceuticals*,
11 571 F.3d at 880.
12    As the government states in its opposition, it "has long acknowledged that there are limits
13 to defendants' financial abilities" and that if Sweeney "encounter[s] problems beyond [his]
14 control, [he] may bring any such issues to the United States' attention and, if necessary, to the
15 Court for dispute resolution."  Opp'n at 8.  But Sweeney must first comply with the injunction
16 and demonstrate good faith efforts to restore Point Buckler Island to its previous condition.

17 **IV.   CONCLUSION**
18    Sweeney's motion for reconsideration of the judgment or for a new trial is **denied.**
19    This order resolves ECF Nos. 216, 288.
20    IT IS SO ORDERED.
21 DATED: February 25, 2025.

SENIOR UNITED STATES DISTRICT JUDGE