UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>John Donnelly Sweeney, et al.,<br><br>　　　　　Defendants. | No. 2:17-cv-00112-KJM-JDP<br><br>ORDER |

Defendant John Donnelly Sweeney moves to alter and stay the court's injunction ordering implementation of the restoration of Point Buckler Island. He also requests clarification of a previous order. As part of his request to alter the injunction, Donnelly also requests to file documents under seal relating to his current financial condition. The government agrees that a stay of the order to restore Point Buckler Island is appropriate, but opposes any alteration to provisions of the injunction order. As described more fully below, the court **grants** the stay, **denies** Sweeney's request for clarification, **denies** Sweeney's motion to alter the injunction, and **denies as moot** Sweeney's request to file documents under seal.

I.　　BACKGROUND

Following a lengthy bench trial, the court found Sweeney had violated, and remained in violation of, the Clean Water Act, 33 U.S.C. §§ 1311 and 1344, by polluting "waters of the United States" in and around Point Buckler Island and by constructing an unlawful levee around

1

the island. Liab. Order & J. (Sept. 1, 2020) at 4–5, 96–97, ECF No. 180. The court initially declined to determine the appropriate remedy but eventually found an injunction was warranted to functionally restore the island to its previous condition. *See* Remedy Order at 10 (Dec. 9, 2022), ECF No. 210. The court found the government's restoration plan to be useful as a guide for the injunction. *See id.* at 32. The court rejected Sweeney's arguments that he was unable to pay for the costs of restoration; it did so based on Sweeney's failing to provide documentation to support his inability to pay, as well as the effectively unrebutted trial testimony of Dr. Daniel Leistra-Jones, an expert witness for the government, who stated under oath "Mr. Sweeney individually can pay approximately $864,000 for the financial obligations of a judgment in this matter without experiencing undue financial hardship." *Id.* at 19 (quoting Trial Tr. at 1110:17–20, ECF No. 168-7). The court referred the matter to Magistrate Judge Peterson, who eventually made a finding regarding the provisions of a restoration plan, *see* ECF No. 278, and the court accepted Magistrate Judge Peterson's findings and recommendations, *see* ECF No. 291. On February 26, 2025, the court denied Sweeney's motion for reconsideration based upon his alleged inability to pay for the restoration of Point Buckler Island, noting that Sweeney had failed to present evidence of his inability to pay both at trial and at the remedy phase of the proceedings. *See* Order at 5, ECF No. 294.

On January 24, 2025, the government filed a notice of transfer of ownership of Point Buckler Island to the John Muir Land Trust (the Trust), a non-profit organization who had bought the island "following a public auction conducted by the Solano County Sheriff's Office pursuant to a writ of execution issued by the Superior Court of California, County of Solano, in favor of the California Regional Water Quality Control Board with respect to civil penalties owed by defendants John D. Sweeney and Point Buckler Club, LLC arising out of their conduct on Point Buckler Island." ECF No. 290 at 2. The government also submitted the deed that specified the Trust was to provide "reasonable access to the land as necessary for John D. Sweeney and Point Buckler Club to comply with the restoration obligations of the [state and federal] judgments . . . ." Writ of Execution at 7, ECF No. 290-1. Prior to the auction, the Trust obtained assignment rights to a 2021 state court judgment of $2,828,000 against Sweeney and Point Buckler Club. *See* Bazel

2

Decl. Ex. 1 at 5–13, ECF No. 297-2.  In consideration of those rights, the Trust agreed to "ensure the restoration of Point Buckler Island pursuant to a restoration plan . . . pursuant to the terms and conditions set forth in this Agreement." *Id.* at 5.  The government submits the Trust's terms and conditions for the restoration of the island is "consistent with the restoration plan the United States established at trial and updated during the recently-concluded referral proceeding before Magistrate Judge Peterson," Response at 2–3, ECF No. 315, culminating in this court's adoption of the restoration plan, Order (Feb. 13, 2025).

Previously, in March 2023, Point Buckler Club, a co-defendant in this case, filed for bankruptcy.  *See* ECF No. 234.  On July 10, 2023, the bankruptcy judge dismissed Point Buckler Club's Chapter 11 filing.  *See* Bazel Decl. Ex. 7.  That bankruptcy judge declared, in pertinent part, that Point Buckler Club had no ability to reorganize because it could not afford the costs of restoring Point Buckler Island.  Bazel Decl. Ex. 6 at 196–98.  Point Buckler Club dissolved at the end of 2024.  *See* Mot. at 15, ECF No. 297.  Sweeney was the owner, operator and supervisor of Point Buckler Club, LLC, from 2011 until its dissolution in 2023.  *See* Liability Order & J. (Sept. 1, 2020) at 50.  Sweeney now renews his argument that he personally does not have the financial ability to pay for the costs of the restoration and seeks to file evidence of his changed finances under seal.  *See* Mot. at 14–17; Sealing Req., ECF No. 297-3.

On April 11, 2025, Sweeney also moved to amend the injunction, asked the court to clarify its prior holdings, and moved to stay the injunction to allow the Trust to restore Point Buckler Island.  *See generally* Mot.  As noted, the government joins Sweeney's request for a stay but asks the court to impose "guardrails" in any stay order "to preserve the potential civil penalty and compensatory mitigation remedies that the Remedy Order addresses . . . ." Response at 7.  The government opposes Sweeney's motion insofar as it seeks to alter this court's injunction order.  *See id.* at 8.  With its response, the government has submitted a proposed order effecting a stay.  *See* Pl.'s Proposed Order, ECF No. 315-1.  Sweeney opposes some of the language in the government's proposed order; with his reply he has submitted requested edits to the government's proposed order as well as his own proposed order as part of his reply brief.  *See* Redlined Version of Government's Order (Redlines), ECF No. 321-1; Defs.' Proposed Order, ECF No. 321-2.  The

matter is fully briefed. *See* Mot.; Response; Reply, ECF No. 321. The court takes the matter under submission without hearing oral argument. *See* E.D. Cal. L.R. 230(g).

## II. LEGAL STANDARD

Under Rules 52, 59, and 60, a court may modify a judgment. However, amending a judgment usually requires "newly discovered evidence." *Brown v. Wright*, 588 F.2d 708, 710 (9th Cir. 1978). "A motion for reconsideration may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (internal marks and citations omitted).

Specifically, Rule 60(b)(5) allows courts to "relieve a party of a party of its legal representative from a final judgment, order, or proceeding" if the "judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." "The Rule codifies the courts' traditional authority, . . . to modify or vacate the prospective effect of their decrees." *Bellevue Manor Assocs. v. United States*, 165 F.3d 1249, 1252 (9th Cir. 1999) (quoting *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932)). This equitable discretion allows courts to "be 'flexible' and 'adjust their decrees, so as to meet most, if not all' of the exigencies to do justice for the parties." *California v. E.P.A.*, 978 F.3d 708, 713 (9th Cir. 2020) (quoting Joseph Story, *W.H. Commentaries on Equity Jurisprudence as Administered in England and America*, Vol. 1 26–27 (C.C. Little & J. Brown eds., 1846)). A party invoking Rule 60(b)(5) must "satisfy the initial burden of showing a significant change either in factual conditions or in the law warranting modification of the judgment." *United States v. Asarco, Inc.*, 430 F.3d 972, 979 (9th Cir. 2005). If the movant can point to "significantly changed factual conditions . . . it must additionally show that the changed conditions make compliance with the [judgment] more onerous, unworkable, or detrimental to the public interest." *Id.* (internal citations and quotations omitted).

/////
/////
/////

### III. MOTION TO ALTER THE INJUNCTION

The court denies Sweeney's motion to alter the injunction and his request for clarification. Regarding altering the injunction, at trial the court found Daniel Leistra-Jones' testimony regarding Sweeney's personal finances to be credible and compelling in the course of finding the injunction to be achievable as a practical matter. *See* Remedy Order at 19. The court did not rely on the finances of Point Buckler Club LLC in reaching its conclusion that Sweeney had the ability to pay for $864,000 in restoration costs. *See id.* The bankruptcy proceedings regarding Point Buckler Club thus do not affect the court's original determination that the injunction it ordered was achievable as a practical matter. As to the evidence Sweeney seeks to present of his changed personal finances, the court has recently rejected these very same claims and sees no basis to revisit these arguments again. *See* Order (Feb. 26, 2025) at 4–6. As the government points out in its response, "[a] motion for reconsideration may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." Response at 8 (quoting Order (Feb. 26, 2025) at 4–5). As the court recently found, Sweeney could have presented reliable evidence of his purported personal poverty much earlier. *See* Order (Feb. 26, 2025) at 5. As Magistrate Judge Peterson noted in the findings and recommendations the court adopted, Sweeney can still raise the issue of his inability to pay at any civil contempt proceeding. *See* F&Rs (Aug. 15, 2024) at 17 n.7, *adopted by* Order (Feb. 13, 2025). Because the court declines to alter the injunction, as there is no viable justification for doing so, the court denies Sweeney's request to file documents under seal as moot. The court also denies Sweeney's request for clarification of its previous order; upon review the court perceives no need for clarification as the terms of the order are readily comprehensible to a reasonable person.

### IV. MOTION TO STAY

The court does grant Sweeney's motion to stay. First, there are significant changes in the factual conditions that originally warranted the injunction. *See Asarco*, 430 F.3d at 979. Second, as the government notes in its joinder of Sweeney's motion, the Trust has "'decades of experience working on large-scale restoration projects in the area' and its 'implementation of the

5

Government's plan would fully accomplish everything the Court's injunction was designed to accomplish.'" Response at 7 (quoting Mot. at 6). Thus, it would be detrimental to the public interest to impede the Trust's restoration of the island. *See Asarco*, 430 F.3d at 979. As Sweeney has met the two-part showing for a party's invoking Rule 60(b)(5), the court will utilize its equitable power to stay the enforcement of the injunction while the Trust restores Point Buckler Island. *See Bellevue Manor Assocs.*, 165 F.3d at 1252.

As noted, the government requests the court impose "guardrails" on any stay, including by providing that Sweeney shall not interfere with the Trust's restoration efforts, allowing the government the ability to move to lift the stay should the Trust discontinue restoration efforts, providing that a stay should be without prejudice to the government's rights to seek a civil penalty in the future, and providing that a stay should be without prejudice to all rights Sweeney may have to oppose or respond to any motion the government may file. *See id.* at 3. The government has provided a proposed order that incorporates language establishing all of these "guardrails."

Sweeney makes four objections to the government's proposed order. First, Sweeney argues the government's desire for Sweeney to not interfere with the restoration of Point Buckler Island extends beyond the scope of the court's prohibitory injunction. *See* Reply at 7 (citing Remedy Order at 10 (Dec. 9, 2022) at 33–34). The court disagrees and rather construes the government's proposed language as being consistent with the court's previous orders. *See* Remedy Order at 33–34 (enjoining Sweeney from "engaging in any earthwork, excavation, grading, or other on-the-ground disturbance activity in any area of Point Buckler Island"). Second, Sweeney objects to the government using the word "rights" in connection with providing for its ability to later seek civil penalties from Sweeney. *See id.* at 8–9. The court overrules this objection as its Remedy Order provides that a party may later seek a determination of civil penalties and there is no good reason to revisit that provision at this time. *See* Remedy Order at 28. Similarly, the court previously denied without prejudice the government's request for compensatory mitigation, allowing the government to renew its attempt to seek such relief at a later date. *See id.* at 28–29. The government's current proposed order simply preserves its ability

6

to bring a motion for a determination of civil penalties or a renewed motion for compensatory mitigation in the future. *See* Proposed Order at 2. Third, Sweeney argues the government's use of the word "judgment" in its proposed order is confusing as the court has not yet entered judgment in this case. *See* Reply at 9. The court agrees the word "judgment" is confusing and has omitted that word in its stay order below. Finally, Sweeney requests the court suspend its referral of matters in this case to Magistrate Judge Peterson during the stay. *See id*. As the court is issuing a stay of the case, further specific instructions to Judge Peterson would be duplicative and unnecessary.

## V. ORDER TO STAY AND CONCLUSION

For the reasons explained above, and good cause appearing, the court **grants** Sweeney's motion to stay enforcement of the injunction as follows:

(1) This case is stayed to allow the Trust to restore Point Buckler Island.

(2) The United States shall file a status report in this case as to the Trust's restoration efforts regarding the Island by December 31, 2025, and annually thereafter or within 30 days of completion of restoration, whichever is earlier.

(3) During the stay effected in paragraph (1) above, defendants shall refrain from interfering with the Trust's restoration efforts regarding the Island.

(4) This order is without prejudice to any party's moving to lift the stay, including the United States' filing a motion to lift the stay set forth in paragraph (1) above if and to the extent that the Trust for any reason discontinues its restoration efforts regarding the Island.

(5) The United States retains all rights it may have under the Remedy Order at 27:6 to 28:5 and 31:26 to 32:3 to file a motion in this case at the appropriate time to initiate a civil penalty assessment proceeding, if the court lifts the stay imposed in this order.

(6) The United States retains all rights it may have under the Remedy Order at 29:6–22 to file a motion in this case at the appropriate time to initiate a proceeding in which the United States seeks to require defendants to effect compensatory mitigation, if the court lifts the stay.

(7) Defendants retain all rights they may have to respond to any motion filed by the United States in this case, and defendants retain all rights they may have to file an authorized motion of their own in this case to which the United States retains all rights to respond, if the court lifts the stay.

Additionally, for the reasons described above, the court **orders**:

- Sweeney's motion to alter the injunction is **denied.**
- Sweeney's request for clarification is **denied**.
- Sweeney's motion to file documents under seal is **denied as moot**.

This order resolves ECF No. 297.

IT IS SO ORDERED.

DATED: July 10, 2025.

UNITED STATES DISTRICT JUDGE